UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:09-cv-01179-LJM-DKL |
| CEPT 5, INC., NICK G. ALLEN, CHRISTOPHER S. ENDRES, PETER T. TADDEO, U.S. SMALL BUSINESS ADMINISTRATION, | ) ) ) ) ) | |
| Defendants. | ) | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) |
| Cross/Counter Plaintiff, | ) |
| vs. | ) ) |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | ) ) ) |
| Counter Defendant, and | ) ) ) |
| CEPT 5, INC., NICK G. ALLEN, CHRISTOPHER S. ENDRES, PETER T. TADDEO, | ) ) ) ) |
| Cross Defendants. | ) ) |

## ORDER ON WELLS FARGO BANK, NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is plaintiff's, Wells Fargo Bank, National Association ("Wells Fargo"), Motion for Summary Judgment [Dkt. No. 29]. The Court has considered the parties' arguments and rules as follows.

## I.  BACKGROUND

Wells Fargo is the holder of defendant's, Cept 5, Inc. ("Cept 5"), Promissory Note dated July 12, 2007 ("Cept Note").  Dkt. No. 30 ¶ 5.  Under the terms of the Cept Note, Cept 5 promised to pay Wells Fargo the original principal sum of $610,000.00 plus interest.  *Id.*

Wells Fargo used a number of means to secure repayment of the Cept Note.  Cept 5 granted to Wells Fargo a construction mortgage ("WF Mortgage") on property located at 2701 North Wheeling Avenue, Muncie, Indiana[1] ("Real Estate").  *Id.* ¶¶ 6–7.  The Real

---

[1] The legal description of the Real Estate is as follows:

A part of the fractional Northwest Quarter of Section Four (4), Township Twenty (20) North, Range Ten (10) East, more particularly described as follows, to-wit: Beginning at the Southeasterly corner of Lot Numbered One hundred one (101) in Plaza Homes, an Addition to the City of Muncie, Indiana, as shown in Plat Book 7, page 63 of the records of plats in Delaware County, Indiana; running thence East on the South line of the said Plaza Homes extended East Ninety-five and thirty-eight hundredths (95.38) feet; thence in a Northwesterly direction with an interior angle of Sixty-five degrees, Twenty-three minutes (650-23') Two hundred twenty-eight and ninety-eight hundredths (228.98) feet to a point in the East line of Lot Numbered One hundred two (102) as shown in said Plaza Homes, which point is Fifty-four and fifty-seven hundredths (54.57) feet North of the Southeast corner of said Lot Numbered One hundred two (102); thence South on the East lines of said Lots Numbered One hundred two (102) and One hundred one (101) Two hundred eight and seventeen hundredths (208.17) feet to the place of beginning Estimated to contain 0.228 acres, more or less. Subject to a Six (6) foot easement of equal width on the entire East side of said Lot for use of Public utilities.

ALSO, Ninety (90) feet of equal width (measured on a line parallel with the center line of the Muncie-Wheeling Turnpike) off of the entire South side of the following described Real Estate: Part of the Northwest Fractional Quarter Section Four (4), Township Twenty (20) North, Range Ten (10) East, Delaware County, Indiana, more particularly described as follows: Commencing at the intersection of the South line of the Northwest Fractional Quarter Section and the center line of the Muncie-Wheeling Turnpike; thence in a Westerly direction along the South line of said Fractional Quarter Section a distance of Two hundred (200) feet to a point; thence in a Northwesterly direction parallel with the center line of the Muncie-Wheeling Turnpike a distance of Three hundred (300) feet to a point; thence in an Easterly direction parallel with the South line of the Northwest Fractional quarter Section Two hundred (200) feet to a point on the center line of the Muncie-Wheeling Turnpike; thence in a Southeasterly direction along the center line of said Muncie-Wheeling Turnpike to the place of beginning, containing 0.376 acres, more or less.

ALSO, Part of the Northwest Fractional Quarter, Section Four (4), Township Twenty (20)

2

Estate is commercial property. *Id.* ¶ 19. On July 17, 2007, Wells Fargo recorded the WF Mortgage. *Id.* ¶ 7. Additionally, on July 12, 2007, pursuant to a Commercial Security Agreement ("Security Agreement"), Cept 5 granted Wells Fargo a security interest in Cept 5's inventory, chattel paper, accounts, equipment, and general intangibles ("Personal Property Collateral"). *Id.* ¶¶ 8–9. Further, defendants Nick G. Allen ("Allen"), Christopher S. Endres ("Endres"), and Peter T. Taddeo ("Taddeo") executed personal guaranties. *Id.* ¶ 10. The terms of the Cept Note, WF Mortgage, and Security Agreement require Cept 5

---

North, Range Ten (10) East, Delaware County, Indiana, more particularly described as follows: Commencing at the intersection of the South line of the Northwest Fractional Quarter Section, and the center line of the Muncie-Wheeling Turnpike; thence in a Northwesterly direction, along the center line of the Muncie-Wheeling Turnpike, Ninety (90.00) feet to the point of beginning of the parcel herein conveyed; thence in a Westerly direction along a line dividing lands herein conveyed from Lands now or formerly of Joseph P. Brady, said line being parallel with the South line of the Northwest Fractional Quarter Section Two hundred (200.00) feet to a point; thence in a Northwesterly direction, on a line parallel with the center line of the Muncie-Wheeling Turnpike, Two hundred ten (210.00) feet to an iron pin; thence in an Easterly direction on a line parallel with the South line of the Northwest Fractional Quarter Section, Two hundred (200.00) feet to a bolt in the center line of the Muncie-Wheeling Turnpike; thence in a Southeasterly direction, along the center line of the Muncie-Wheeling Turnpike, Two hundred ten (210.0) feet to the point and place of beginning, containing 0.877 acres, more of less.

EXCEPT: A part of the Fractional Northwest Quarter of Section Four (4), Township Twenty (20) North, Range Ten (10) East in the City of Muncie, Delaware County, Indiana, described as follows: Beginning at the Southeast corner of Lot One hundred one (101) in Plaza Homes, an Addition to the City of Muncie, as shown in Plat Book 7, page 63, Records of Delaware County, Indiana; thence North Zero degrees, Zero minutes, Zero seconds Seventy-three and seventy-one hundredths (73.71) (assumed bearing) along the East line of said lot; thence North Eighty-two degrees, Fifty-one minutes, Five seconds East (N 82°-51'-05" E) One hundred twenty-eight and ninety-six hundredths (128.96) feet; thence North Seventy-three degrees, Twenty-five minutes, Fifty-five seconds East (N 73°-25'-55" E) One hundred fifteen and ninety-five hundredths (115.95) feet to a point on the center line of Wheeling Avenue; thence South Twenty-four degrees, Twenty-six minutes, Three secondi East (S 24°-26'-03" E) One hundred thirty-five (135.00) feet along the center line of said avenue to the point of intersection of said center line with the South line of the Fractional Northwest Quarter of Section Four (4), Township Twenty (20) North, Range Ten (10) East; thence South Ninety degrees, Zero minutes, Zero seconds West (S 90°-00'-00" W) Two hundred ninety-five and thirty-eight hundredths (295.38) feet to the point of beginning, containing Fifty-nine hundredths (0.59) of an acre, more or less, and subject to the right-of-'way for Wheeling Avenue along the Easterly line and to all easements of record.

Dkt. No. 30 ¶ 6.

to make monthly payments to Wells Fargo. *Id.* ¶ 11. Cept 5 has failed to make those payments. *Id.* ¶ 12. Neither Allen, Endres, nor Taddeo has paid his personal guaranty. *Id.* ¶ 17.

Wells Fargo also is the holder of a Wings ETT, Inc. ("Wings") United States Small Business Administration ("SBA") Promissory Note dated October 17, 2007 ("Wings Note"), wherein Wings promised to pay Wells Fargo the original principal sum of $600,000.00 plus interest. *Id.* ¶ 13. Repayment of the Wings Note is secured by personal guaranties executed by Endres and Taddeo ("Wings Guaranties"), also dated October 17, 2007. *Id.* ¶ 14. Following default on the Wings Note, Wells Fargo obtained a judgment in Porter Superior Court against Endres and Taddeo. *See Wells Fargo Bank, Nat'l Assoc. v. Wings ETT, Inc.*, No. 64D05-0908-PL-8661 (Porter Sup. Ct. Feb. 19, 2010) (unpublished).

The Cept Note and the Wings Guaranties are cross-defaulted under their terms. Dkt. No. 30 ¶ 16. As a result of the failure to pay on the Cept Note and the various personal guaranties, as well as the cross-default under the Wings Guaranties, Wells Fargo has accelerated and demanded full payment of the amounts due under the Cept Note. *Id.* ¶ 18.

SBA also claims an interest in the Real Estate and some of the Personal Property Collateral. On November 29, 2007, Wells Fargo entered into a Third Party Lender Agreement ("TPL Agreement") with Business Development Corporation ("BDC"). *See* dkt. no. 33-1. Pursuant to the TPL Agreement, BDC recorded a mortgage against the Real Estate ("SBA Mortgage"), which was assigned to SBA on March 17, 2008. Dkt. Nos. 11-2, 11-3. Under the TPL Agreement, Wells Fargo agreed "[t]o the extent [its] Lien secures any amounts attributable to Default Charges . . . [Wells Fargo's] Lien is and will be subordinate

to the [SBA Mortgage]." Dkt. No. 33-1 ¶ 9(b). The term "Default Charges" includes "prepayment penalties, late fees, other default charges, and escalated interest after default due under the [Wells Fargo] Loan." *Id.* ¶ 9(a).

As of August 6, 2010, the outstanding principal balance on the Cept Note was $591,255.01, accrued and unpaid interest amounted to $25,492.29, and accrued and unpaid late charges amounted to $955.04. Dkt. No. 30 ¶ 20. Interest continues to accrue at the rate of $191.17 per day. *Id.* Additionally, the Cept Note, WF Mortgage, and Security Agreement allow Wells Fargo to seek attorneys fees, title expenses, appraisal fees, and other related costs incurred in bringing this action. *Id.* ¶ 21.

On September 16, 2010, Wells Fargo filed the present Motion for Summary Judgment. *See* dkt. no. 29. In its Motion, Wells Fargo seeks a judgment against Cept 5, Allen, Endres, and Taddeo for the Cept Note and the personal guaranties. *Id.* at 8–9. Wells Fargo also seeks a declaration that the WF Mortgage is the first lien in priority on the Real Estate and that Wells Fargo may foreclose on the Real Estate. *Id.* at 9. Lastly, Wells Fargo requests a declaration on its priority in the Personal Property Collateral and an order for surrender of the same. *Id.*

Defendants Cept 5, Endres, and Taddeo failed to respond to Wells Fargo's Motion for Summary Judgment in any way. Allen filed a motion to stay and compel arbitration, which the Court granted on June 6, 2011. *See* dkt. no. 34. SBA does not contest summary judgment being entered against all other defendants. However, SBA requests that any judgment entered specifically notices SBA's priority as to the Real Estate and the Personal Property Collateral, as well as Wells Fargo's contractual obligations with regard to Default Charges. *See* dkt. no. 33.

5

The Court includes additional facts below as necessary.

## II. LEGAL STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine dispute of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers,*

*Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III.  DISCUSSION

Pursuant to the Court's June 6, 2011 Order, Wells Fargo's claims against Allen are stayed to allow for arbitration in accordance with the parties' agreement. *See* dkt. no. 39. As such, the discussion that follows does not concern any claims by Wells Fargo against Allen personally.

The undisputed material facts show that Cept 5, Endres, and Taddeo have defaulted

on their respective obligations to Wells Fargo. The Cept Note states that default occurs when, among other things, Cept 5 "falls to make any payment when due[.]" Dkt. No. 1-2 at 2. Endres's and Taddeo's guaranties require "full and punctual payment, performance and satisfaction" of Cept 5's obligations to Wells Fargo. Dkt. No. 1-6 at 1, 6. It is undisputed that required payments have not been made. Dkt. No. 30 ¶¶ 12, 17. Therefore, Cept 5, Endres, and Taddeo have defaulted in their obligations to Wells Fargo.

## A. REAL PROPERTY COLLATERAL

Additionally, the evidence indicates that the WF Mortgage takes priority over the SBA Mortgage. Because in cases involving real property, "property ownership is not governed by a general federal law, but rather by the property law of the state in which the property is located," Indiana law determines priority between competing interests. *United States v. LaRosa*, 765 F.2d 693, 696 n.1 (7th Cir. 1985) (citing *Oregon ex. rel St. Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–79 (1977)). Under Indiana law, "a conveyance, mortgage, or lease takes priority according to the time of its filing." Ind. Code § 32-21-4-1(b) (2011). The WF Mortgage, recorded on July 17, 2007, was the first mortgage filed. Dkt. No. 30 ¶ 7. Therefore, it takes priority over the SBA Mortgage, which was recorded on March 17, 2008. *See* dkt. no. 11-2 at 1.

While SBA concedes that the WF Mortgage takes priority over the SBA Mortgage, SBA contends that the "Default Charges" provision of the TPL Agreement limits Wells Fargo's recovery and puts the SBA Mortgage in first priority as to at least some of the debt. The TPL Agreement provides that the SBA Mortgage "will be junior and subordinate to the lien or security interest held by" Wells Fargo with the exception of "Default Charges." *See*

*generally* dkt. no. 33-1. "The term 'Default Charges' . . . includes, but is not limited to, prepayment penalties, late fees, other default charges, and escalated interest after default due under" Wells Fargo's loan. *Id.* ¶ 9(a). Any amounts attributable to Default Charges are subordinated to the SBA Mortgage. *Id.* ¶ 9(b).

Turning to Wells Fargo's requested damages as of August 6, 2010, the outstanding principal balance—$591,255.01—unquestionably falls outside the definition of Default Charges and, therefore, Wells Fargo has first priority to that amount. *See* dkt. no. 30 ¶ 20. Wells Fargo further requests attorneys' fees and expenses, as well as title expenses, appraisal fees, and related costs in connection with any foreclosure. The WF Mortgage allows for recovery of these expenses. Dkt. No. 1-3 at 9–10. However, the Court cannot issue a judgment as to these expenses without more detailed statements as to what those expenses are. Wells Fargo's request for late fees of $955.04 is covered within the definition of Default Charges. Dkt. No. 30 ¶ 20; *see also* dkt. no. 33-1 ¶ 9(a). Therefore, the SBA Mortgage has first priority as to that amount, as well as any amount remaining after satisfaction of the obligations owed to Wells Fargo.

Turning to interest claimed by Wells Fargo, it is difficult to determine what portion, if any, results from post-default interest rather than pre-default interest. Wells Fargo is entitled to any amount of interest accrued prior to default, as well as any post-default interest accrued at the pre-default rate. However, the Cept Note provides that after default, "the interest rate on this Note shall be increased by adding a 4.000 percentage point margin." Dkt. No. 1-2 at 2. The point margin increase in the interest rate is "escalated interest" and, as such, the amount attributable to such margin is subordinated to the SBA Mortgage as well. *See* dkt. no. 33-1 ¶ 9(a). Because there is no evidence as to when

9

default occurred and what interest rate has been used in Wells Fargo's calculations, the Court cannot determine whether Wells Fargo or SBA has a higher priority interest in those funds. Wells Fargo's request for an additional $191.17 daily of accruing interest suffers from a similar problem. Without evidence regarding the current and pre-default interest rates, the Court cannot determine the competing priorities in these funds.

Taken together, the Court concludes that Wells Fargo may foreclose on the Real Estate to recoup the amounts it is owed under the Cept Note and the guaranties of Endres and Taddeo. Wells Fargo shall have senior priority to any foreclosure proceeds necessary to meet the amount of outstanding principal, as well as interest at the pre-default rate accrued both pre- and post-default. SBA shall have priority as to any remaining foreclosure proceeds, with Wells Fargo having priority junior to SBA to the extent necessary to compensate Wells Fargo for late fees or marginal increases in post-default interest.

SBA further requests that the Court explicitly recognize its statutory right of redemption. "Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of the sale within which to redeem[.]" 28 U.S.C. § 2410(c). As Wells Fargo has priority over the vast majority of the proceeds from the foreclosure on the Real Estate in this case, the Court recognizes SBA's right to redemption under 28 U.S.C. § 2410.

## B. PERSONAL PROPERTY COLLATERAL

Wells Fargo also seeks summary judgment determining the status of the Personal Property Collateral. In its July 19, 2007, filing statement, Wells Fargo claims an interest in "all inventory, chattel paper, accounts, equipment and general intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles, and other accounts proceeds)." Dkt. No. 1-5. SBA's March 13, 2008, filing statement claims an interest in "all of [Cept 5]'s equipment now owned of hereafter acquired, together with all replacements, accessions, proceeds and products." Dkt. No. 11-8.

As no other party has a security interest in Cept 5's inventory, chattel paper, accounts, or general intangibles, Wells Fargo has first priority as to these items. However, both Wells Fargo and SBA claim an interest in Cept 5's equipment. Dkt. Nos. 1-5, 11-8. Priority for security interests in equipment are generally determined by the order of filing of financing statements. Ind. Code §§ 26-1-9.1-308, -322 (2010). Because there is no evidence that SBA's interest is a purchase money security interest in the equipment such to provide an exception to the general rule, *see* Ind. Code § 26-1-9.1-324 (2010), the Court concludes that Wells Fargo's lien over all of the Personal Property Collateral, including the equipment, takes priority over SBA's lien on the equipment. Wells Fargo may use the Personal Property Collateral to recoup its losses under the Cept Note to the extent permitted by the Cept Note and the TPL Agreement.

## IV. CONCLUSION

For the reasons discussed herein, Wells Fargo's Motion for Summary Judgment [Dkt No. 29] is **GRANTED**.

Defendants Cept 5, Inc., Christopher S. Endres, and Peter T. Taddeo are in default in their obligations to plaintiff, Wells Fargo Bank, National Association. Wells Fargo will be permitted to foreclose upon the real estate located at 2701 North Wheeling Road, Muncie, Indiana, and has first priority to the proceeds of such foreclosure except as provided in the Third Party Lender Agreement with the Small Business Administration. The Small Business Administration has second priority in the proceeds from foreclosure of the real estate, except as to Default Charges as defined in the Third Party Lender Agreement, as to which the Small Business Administration has first priority.

In addition, Wells Fargo has first priority as to the Personal Property Collateral as laid out in its financing statement and is permitted to foreclose on the same. The Small Business Administration has second priority on all equipment included in such Personal Property Collateral.

The parties are **ORDERED** to provide documentation to the Court sufficient for a monetary judgment to be entered, including interest rate calculations and the amount of attorneys' fees, within thirty (30) days of this Order.

IT IS SO ORDERED this 20th day of June 2011.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Joseph Lee Amaral
HAMMERSCHMIDT, AMARAL & JONAS
jla@hajlaw.com

Jared C. Helge
ROTHBERG, LOGAN & WARSCO LLP
jhelge@rlwlawfirm.com

James A. Masters
NEMETH, FEENEY, MASTERS & CAMPITI, P.C.
jmasters@nfmlaw.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE
william.mccoskey@usdoj.gov